IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


EDWARD J. ZAKRZEWSKI,

       Petitioner,

v.                                       Case No.: 3:04cv66/RV

JAMES R. McDONOUGH,[1] Secretary,
Florida Department of Corrections,
et. al,


       Respondents.
_____/

ORDER

This matter is before the Court on remand from the United States Court of Appeals for the Eleventh Circuit for consideration of the merits of Petitioner's motion for relief from judgment, pursuant to Fed. R. Civ. P. 60(b) (doc. 52).  After review of all of the case record relevant to this motion, and after careful consideration, Petitioner's motion is denied.

BACKGROUND

Petitioner, Edward J. Zakrzewski, pled guilty to three counts of first-degree murder for the 1994 murders of his wife and two children.  After a penalty phase trial, the sentencing jury recommended a sentence of death for the murders of petitioner's wife and son by a vote of 7-5, and recommended a sentence of life imprisonment for the murder of petitioner's daughter as the result of a tie vote of 6-6. After considering

---

[1] James R. McDonough succeeded James V. Crosby, Jr. as Secretary for the Department of Corrections and is automatically substituted as Respondent.  See Fed. R. Civ. P. 25(d)(1).

Page 2 of 19

the relevant aggravating and mitigating factors, the trial court imposed a death sentence on all three counts.  Petitioner's death sentences were affirmed on direct review by the Supreme Court of Florida, and the Supreme Court of the United States denied certiorari.  See Zakrzewski v. State, 717 So.2d 488 (Fla. 1998), cert. denied, 525 U.S. 1126, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999).  Thereafter, Petitioner filed a motion for post-conviction relief in state court pursuant to Fla. R. Crim. P. 3.850 which was denied by the trial court.  The denial of post-conviction relief was affirmed by the Supreme Court of Florida.  See Zakrzewski v. State, 866 So.2d 688 (Fla. 2003).

Petitioner then filed in this court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 23, 2004 (doc. 1).  Petitioner raised six grounds for relief in his writ, only two of which were properly exhausted and considered on the merits.[2]  After both sides had fully briefed the issues, I entered an order denying habeas corpus relief on September 30, 2004 (doc. 30).  After a timely application for a certificate for appealability (doc. 34), I granted Petitioner's application, in part. (Doc. 38).  The United States Court of Appeals for the Eleventh Circuit thereafter affirmed the denial of Petitioner's initial habeas petition.  Zakrzewski v. McDonough, 455 F.3d 1254 (11th Cir. 2006).

While the appeal of his federal habeas petition was pending, Petitioner filed a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(doc. 52), which I construed as the equivalent of a second or successive habeas petition.  Therefore, I denied it for lack of jurisdiction (doc. 75).  After denying two motions to alter or amend this judgment filed by each party, respectively, I granted a certificate of

---

[2]The following claims were reviewed on their merits:  (1) whether petitioner received ineffective assistance of counsel in violation of the Sixth Amendment when his trial counsel failed to object to certain statements made by the prosecutor in closing argument, and (2) whether petitioner received ineffective assistance of counsel in violation of the Sixth Amendment when his trial counsel failed to file a motion to suppress all of the evidence contained in the house which constituted the murder scene.

Case No.: 3:04cv66/RV

appealability on the issue (doc. 101).[3] The United States Court of Appeals for the Eleventh Circuit concluded that Petitioner's motion was not a second or successive habeas petition, vacated this Court's judgment, and remanded for consideration of the merits of Petitioner's motion. Zakrzewski v. McDonough, 490 F.3d 1264 (11th Cir., July 03, 2007).

**DISCUSSION**

Petitioner moves for an order re-opening the judgment in this case pursuant to Fed. R. Civ. P. 60(b). He bases his motion on the allegedly fraudulent representations made by his attorney, John Nall, in obtaining appointment in this case for the purported purpose of obtaining the attorney fees available in this federal appointment. Petitioner asserts that this is a fraud on the court which denied him his right to due process and his right to full and fair access to this court.

These allegedly fraudulent representations can be summarized as follows:

1.      Nall perpetrated a material misrepresentation in seeking appointment as Petitioner's counsel without Petitioner's knowledge or consent; specifically by informing the court in his motion for appointment of counsel that he "is thoroughly familiar with [petitioner's] case and has a good relationship with him," and that he "commenced preparation of [petitioner's] habeas petition beginning in November of 2003." (See doc. 7, p. 3).

2.      Nall perpetrated a material misrepresentation in informing the court in his motion for appointment of counsel that he was then a partner of Petitioner's post-conviction Florida collateral counsel, Baya Harrison, III. (See id. at p. 2). In later correspondence with the Florida Bar, Nall certified that he was a solo practitioner. Petitioner alleges that "Mr. Nall and Mr. Harrison sought to deceive this Court as to

---

[3]The specific issue on appeal was whether the court properly denied petitioner's motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(3) for lack of jurisdiction because the motion is the functional equivalent of a second or successive habeas petition and, therefore, cannot be entertained without an order from the court from the court of appeals authorizing the filing of a successive petition.

Case No.: 3:04cv66/RV

their working relationship in order to facilitate Mr. Nall's appointment to this case." Doc. 52, p. 18.

3.   Nall and Petitioner had a relationship which became adversarial once Petitioner filed a complaint against Nall with the Florida Bar. Petitioner also alleges that the attorney/client privilege was compromised when Nall and Harrison responded to the Bar complaint.

**A.   Fraud Pursuant to Rule 60(b)(6)**

Federal Rule of Civil Procedure 60(b) ("Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.") provides in relevant part as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

An independent action under Rule 60(b) is available "only to prevent a grave miscarriage of justice." Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S. Ct. 997, 88 L. Ed. 1250 (1944), overruled on other grounds by Standard Oil Co. v. United States, 429 U.S. 17, 97 S. Ct. 31, 50 L. Ed 2d 21 (1976).  "Independent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." United States v. Beggerly, 524 U.S. 38, 46, 118 S. Ct. 1862, 141 L. Ed. 2d 32 (1998)(quoting Hazel-Atlas Glass Co., 322 U.S. at 244.)   Therefore, the type of fraud that could form a basis for relief under Rule 60(b)(3) is different than the type of fraud

necessary to maintain an independent action under Rule 60(b)(6). See Beggerly, 524 U.S. at 46.

A relief from judgment under Rule 60(b)(6) is an extraordinary remedy which requires a showing of exceptional circumstances. See Ackermann v. United States, 340 U.S. 193, 202, 71 S. Ct. 209, 213, 95 L. Ed. 207 (1950); Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 863-64; 108 S. Ct. 2194, 2204-05, 100 L. Ed. 2d 855 (1988); High v. Zant, 916 F. 2d 1507, 1509 (11th Cir. 1990). The court in Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978)[4] discussed the distinction between fraud under Rule 60(b)(3) and Rule 60(b)(6) as follows:

> Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. . . . Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court. . . . Alternatively stated, '(in) order to set aside a judgment or order because of fraud upon the court under Rule 60(b) . . . it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'
> (Cites omitted).

The Eleventh Circuit recited the following test in determining what constitutes fraud upon the court,

> 'Fraud upon the court' should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudicating cases that are presented for adjudication, and relief should be denied in the absence of such conduct. . . . Given the absence of a rigid time limitation for bringing an independent action, and the 'deep-rooted federal policy of preserving the finality of judgments, fraud upon the court cannot necessarily be read to embrace any conduct of which the court disapproves.'

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

Case No.: 3:04cv66/RV

Travelers Indemnity Co. v. Gore, 761 F.2d 1549, 1551 (11th Cir. 1985)(per curiam) (citing 7 Moore's Federal Practice § 60.33 & Williams v. Bd. of Regents, 90 F.R.D. 140 (M.D. Ga. 1981)).  The moving party must prove this fraud by clear and convincing evidence and must demonstrate that the conduct prevented the movant from fully presenting his case.  See Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003); Scutieri v. Paige, 808 F.2d 785, 794 (11th Cir. 1987); see also Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984)("The provisions of this rule must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments and the 'incessant command of the court's conscience that justice be done in light of *all* the facts.'"(citation omitted)).  In Booker v. Dugger, 825 F.2d 281, 284 (11th Cir. 1987), the Eleventh Circuit has held that "[w]here complaintant's own negligence or oversight, however innocent, contributed to the original judgment, an independent action for relief in not proper unless the evidence which would establish injustice is 'practically conclusive'".  (Citation omitted).

The court in Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 402 (5th Cir. 1981), citing United States v. Gould, 301 F.2d 353, 355-56 (5th Cir. 1962), has identified the following factors for consideration when considering fraud on the court under Rule 60(b)(6):

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

Case No.: 3:04cv66/RV

These factors are to be considered in light of the great desirability of preserving the principle of the finality of judgments.

Under certain circumstances, an attorney's conduct may constitute fraud upon the court.  For example, in Hazel-Atlas Glass Co., supra, an attorney wrote an article extolling a patented process for glass pouring and had a supposedly unbiased expert sign the article as if he had written it.  The attorney then used the article as authority in his arguments in a patent infringement action.  The Supreme Court of the United States found that the Patent Office (in granting the patent) and the Third Circuit Court of Appeals (in upholding its validity) had relied on this article.  The Court held that a fraud upon the court had occurred and that "tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant.  It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society."  Id., 322 U.S. at 246. The Court found a "deliberately planned and carefully executed scheme to defraud."  Id., 322 U.S. at 245.

Generally, however, perjury does not constitute fraud on the court and an attorney is expected to represent the interests of his client and has no duty to inform the opposing party of possible defenses.  See Gore, supra, 761 F. 2d at 1552 ("Perjury by a party does not meet this standard [for fraud] because the opposing party is not prevented from fully presenting his case and raising the issue of perjury in the original action.  Perjury and fabricated evidence are evils that can and should be exposed at trial, and the legal system encourages and expects litigants to root them out as early as possible. . . .  Fraud on the court is therefore limited to the more egregious forms of subversion of the legal process, . . . those we cannot necessarily expect to be exposed to by the normal adversary process."); Securities and Exchange Commission v. ESM Group, Inc., 835 F. 2d 270, 274 (11th Cir. 1988)("However, Hazel-Atlas is distinguishable from the instant case because the attorney in that case was a direct participant in a deliberate plan conceived for the purpose of defrauding

the opposing party, the patent office and the Court of Appeals." In this case, "[a]t best, Peat Marwick's allegations against ESM's attorney amounted to a failure to disclose information which would have been helpful in Peat Marwick's defense. This does not constitute fraud on the court. The fraud alleged went strictly to the credibility of witnesses, not to any miscarriage of justice." Id. at 274).

With regard to an attorney's diligence in representing his clients, the former Fifth Circuit in Seven Elves, Inc. reversed a judgment pursuant to Rule 60(b)(6) which was entered against the appellants because their absence to appear was due to a number of unusual circumstances:

> [t]hey were informed by their attorney that no action would be required of them unless and until he contacted them; he subsequently "withdrew" from the case without being relieved as attorney of record or informing the appellants of his withdrawal; he determined he would not appear at trial without informing the appellants of that decision; and although notice of trial was forwarded to the appellants, they did not in fact receive it.

Seven Elves, Inc., supra, 635 F. 2d at 404. The Court of Appeals for the Second Circuit has also held that "[t]o be 'extraordinary circumstances' for purposes of Rule 60(b)(6), a lawyer's failures must be so egregious and profound that they amount to the abandonment of the client's case altogether, either through physical disappearance or constructive disappearance." Harris v. United States, 367 F.3d 74, 81 (2nd Cir. 2004)(internal citations omitted).

Courts have generally refused to find fraud on the court in cases in which the wrong was only between the parties in the case and involved "no direct assault on the integrity of the judicial process." 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2870 at 416. "Stated another way, fraud on the court requires a 'scheme by which the integrity of the judicial process has been fraudulently subverted by a deliberately planned scheme in a manner involving 'far more than an injury to a single litigant.'" Ballew v. United States Dept. of Justice, 244 F.3d 138 at

3 (5th Cir. 2000)(unpublished)(citation omitted). In Ballew, the plaintiff contended that the Department of Justice attorneys conspired to mislead the court as to the nature and value of a settlement proceeding of which Ballew had been entitled to a percentage. The Fifth Circuit held that "[t]aking all of these assertions as true, Ballew has only established that the Government committed a fraud against him *as an individual*. Ballew has shown injury to himself in his capacity as a "single litigant," but this alone is not sufficient to constitute fraud on the court. Ballew has failed to allege an attack on the integrity of the judicial process itself." Id.

The Sixth Circuit addressed attorney conduct in Demjanjuk v. Petrovsky, 10 F.3d 338 (6th Cir. 1993), which dealt with an denaturalization and extradition proceeding against a man accused of committing atrocities during the Holocaust. Demjanjuk was accused of being a concentration camp guard known as "Ivan the Terrible." He brought an action under Rule 60(b) asserting that the Department of Justice attorneys failed to turn over exculpatory evidence during the original proceeding. The court stated:

> As an officer of the court, every attorney has a duty to be completely honest in conducting litigation. Professor Moore emphasized this element of fraud in his treatise:
>
> [W]hile an attorney should represent his client with singular loyalty, that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates fraud upon the court. 7 Moore's Federal Practice and Procedure § 60.33.

Id. at 352. The court held that the attorneys' conduct was fraud on the court because the attorneys "acted with reckless disregard for the truth and for the government's obligation to take no steps that prevent an adversary from presenting his case fully and fairly." Demjanjuk, 10 F.3d at 354.

Subsequent panels of the Sixth Circuit have adopted Demjanjuk's reasoning into

the following elements of the claim : "conduct (1) on the part of an officer of the court, (2) [t]hat is directed to the 'judicial machinery' itself, (3) [t]hat is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth, (4) [t]hat is a positive averment or is concealment when one is under a duty to disclose, and (5) [t]hat deceives the court." Workman v. Bell, 245 F.3d 849, 853 (6th Cir. 2001). The court in Computer Leasco, Inc. v. NTP, Inc., 194 Fed. Appx. 328, 338 (6th Cir. 2006)(allegations of fraud involving an attorney who did not appear of record in the proceedings in question)(citing Demjanjuk,10 F.3d at 354) read these elements "to require that the individual accused of perpetrating the fraud must have directly interacted with the court to 'prevent an adversary from presenting his case fully and fairly.'"

## FACTUAL FINDINGS

**1.   Whether Attorney Nall made a material misrepresentation to Petitioner, upon which he relied to his detriment, regarding the filing of his petition for habeas relief.**

In his motion for relief from judgment, Petitioner cites the following alleged material misrepresentations made by Attorney Nall: 1) that he is a partner of Baya Harrison, III; 2) that he is thoroughly familiar with Petitioner's case and has a good relationship with him; and 3) that he commenced preparation of his habeas petition in November of 2003.  See Doc. 52.  While these allegations may be relevant in determining whether a material misrepresentation was made to the court, they do not address whether a material misrepresentation was made to Petitioner regarding the filing of his habeas petition.

A letter dated January 12, 2004, written by Harrison to Petitioner enclosing the habeas petition for his signature, is critical to this issue.  See doc. 52, Attachment A. In this letter, Harrison explained that time was of the essence in filing the federal habeas petition because Petitioner's former post-conviction counsel delayed in filing his state petition such that the federal petition had to be filed on the same day that

the Supreme Court of Florida issued its mandate.   Thus, the petition would have to be filed immediately after the mandate, or it would be time-barred.  Harrison also explained who Nall was ("my associate") and why he would be signing the petition as counsel instead of Harrison ("I am not a member of the U.S. District Court in the Northern District.  But John is.").  Harrison also reiterated that  he (Harrison) "will be there for you all the way in the U.S. District Court with John–and after that as well if necessary.   But John has to sign the pleadings as the attorney." Id.

Petitioner has not demonstrated that any of these representations was untrue nor that he was induced to sign his federal habeas petition because of any other misrepresentations on the part of Nall or Harrison.[5]  While it is understandable that Petitioner felt compelled to sign the pleading so as not to risk his federal habeas petition being dismissed and was understandably frustrated by this situation, the fact is that this risk was real (and one that was not created by either Harrison or Nall).  Furthermore, Petitioner knew that he was unfamiliar with Nall at the time he signed the petition and understood the necessity of Nall being involved in the case.  There is no allegation that Petitioner was displeased with Harrison's prior representation, nor is there any indication that Harrison did not assist Nall in the preparation of the habeas petition and other related filings.  There is also nothing in the record to indicate that preparation of the pleadings did not commence in November of 2003.

Therefore, Petitioner has not demonstrated that any material misrepresentations were made to him regarding the filing of his habeas petition, nor that he relied on any to his detriment.

2. **Whether Attorney Nall made a material misrepresentation to this Court upon which it relied in deciding to appoint Nall to represent Petitioner.**

In his motion for appointment of counsel, Nall arguably made two

---

[5]Petitioner could argue that in describing Mr. Nall as his "associate" Mr. Harrison was misrepresenting the status of their business entity; however, the use of the word "associate" is too general to consider this statement a material misrepresentation.

Case No.: 3:04cv66/RV

misrepresentations to this Court. First, he identified himself as a partner of Baya Harrison, III. (Doc. 7 at 2). Harrison is well known in Florida. Second, Nall stated that he "has a good working relationship with [Petitioner]." Id. at 3. Correspondence related to the Florida Bar complaint filed against Nall by Petitioner indicates that Nall is not an actual legal partner of Harrison, but that they did have a working relationship. See attachments to doc. 56. Also, it is undisputed that Nall did not actually meet with Petitioner prior to filing his habeas petition. Thus, they did not have a personal face-to-face relationship at all. Nevertheless, these misrepresentations are not material in this case.

In considering the motion for appointment of counsel, I determined that Nall was qualified to represent Petitioner, based on his experience which he outlined in the motion. An important consideration in his appointment was the fact that he had a working relationship with Harrison, Petitioner's state post-conviction counsel. In fact, he stated that he then primarily practiced criminal law with Harrison. See doc. 7 at 1. I gave great weight to the representation that "[b]ecause of the involvement of Mr. Harrison in all of the state court post conviction proceedings, the undersigned will be working closely with him during this proceeding in order to have the benefit of his knowledge and experience." Doc. 7 at 3. Of course, I recognized Harrison's name and believed that he would do a good job.

In granting Nall's appointment, his working relationship with Harrison was considered to be far more important than whether they were actual law partners. Harrison's former representation of Petitioner and, thus, his familiarity with the facts and legal arguments involved in his case would obviously aide Nall in his representation in the federal case. While the statement that Nall and Petitioner had a good relationship made me more inclined to make Nall's appointment, it was not a deciding factor. Therefore, I did not rely on the misrepresentations of Nall regarding either a partnership with Harrison or an established relationship with Petitioner in

appointing him to represent the Petitioner.

3.  **Whether Petitioner ratified the representation by Attorney Nall.**

In his Rule 60(b) motion, Petitioner alleges that Nall sought appointment as his habeas counsel without his knowledge or consent. However, the correspondence from Harrison to Petitioner makes clear that Harrison explained who Nall was and why he was signing the petition instead of Harrison.[6] Petitioner was also informed in detail in this correspondence why time was a critical factor in the filing of the federal petition. Petitioner, thereafter, signed the petition in light of these circumstances. By doing so, he accepted Nall's representation. This must be deemed as ratifying and consenting to Nall's actions as his counsel.

4.  **Whether and to what extent this Court considered the alleged misrepresentations of Attorney Nall when denying Petitioner's motion for new counsel.**

In reviewing Petitioner's emergency motion for appointment of new counsel (doc. 17) and the accompanying attachments filed on May 4, 2004, I concluded that the Petitioner simply did not make a sufficient showing to warrant granting the motion. With regard to the concerns he raised, the attachments made clear that Harrison had fully explained who Nall was and why he needed to sign the pleadings, and reiterated that both he and Nall were handling the case. See doc. 17, Attachment A, page 2 ("But make no mistake about it, I will be there for you all the way in the U.S. District Court with John–and after that as well if necessary. But John has to sign the pleadings as the attorney."). Therefore, it did not appear that Petitioner lacked knowledge of who Nall was, or that Nall was representing Petitioner without his consent.

---

[6] "Note that John Nall, my associate, is signing the petition. That is because, although I am admitted to the 11th Circuit Court of Appeals (the appeals court we would go to if we do not win in the US District Court in Pensacola) and the U.S. Supreme Court, I am not a member of the US District Court in the Northern District. But John is. But make no mistake about it, I will be there for you all the way in the U.S. District Court with John–and after that as well if necessary. But John has to sign the pleadings as the attorney." Doc. 52, Attachment A.

Case No.: 3:04cv66/RV

In addition, the correspondence attached to his motion indicated that Harrison and Nall were responding to Petitioner's requests for information. See correspondence from Petitioner, Doc. 17, Attachment B at 15 ("Thank you for your letter dated 20 Jan. 04."); Attachment B at 17 ("I'm in receipt of your letter dated February 5, 2004 and truly appreciate your timely reply."); Attachment B at 18 ("I'm in receipt of your letter dated 2-10-04."); Attachment B at 21 ("I am in receipt of your letter dated March 26, 2004 with the Memorandum of Law."). Additionally a letter from Nall to Petitioner dated May 7, 2004, was attached to the motion at Attachment C.

> ("However, you need to realize that I work with Baya Harrison, and that he and I are working together on your case. The only reason that my name is on the pleadings rather than his is because he is not a member of the Bar for the Northern District. This does not keep him from working on your case- - - indeed, he is working hard on it- - - but it does mean that my name has to be on the pleadings. It is really just a formality- - - it is still his case. . . . you need to thoroughly understand that this is a case both Baya Harrison and I are working on together. So if you are satisfied with Baya's qualifications then you are OK on that score." Id. at 3).

This correspondence does not indicate that Petitioner had been abandoned by his counsel, nor that he was not being kept reasonably informed about his case. Also, it was clear that Harrison was still involved in assisting in this case.

In his emergency motion, Petitioner failed to demonstrate that Nall was unqualified to represent him, nor had he shown that Nall had abandoned him. The gist of the motion seemed to center on Petitioner's dissatisfaction with the adequacy of the habeas petition and Nall's alleged incompetence.[7] These allegations are frequently made regarding appointed counsel, and were not sufficient to warrant appointing Petitioner new counsel. Additionally, I carefully reviewed Respondents' opposition to

---

[7]For example, statements such as the following indicate his concerns with Mr. Nall were largely centered on issues of the competency of his representation: "Petitioner was compelled to sign the inadequate petition"; "I'm all the more distressed by [Mr. Nall's] lack of understanding of federal appellate procedure"; "Respondents' response to Petitioner's §2254 exacerbates counsel's incompetence"; "Petitioner has no faith in counsel's ability to represent him and has lost all trust in his loyalty and willingness to do so." See doc. 17.

Case No.: 3:04cv66/RV

this motion and concurred that any attempt by Petitioner to amend his petition would be time-barred under 28 U.S.C. § 2244(d).

Petitioner's allegations were fully considered, but taken as a whole, they plainly did not warrant granting the motion. Therefore, his motion was denied.

5. **Whether and to what extent this Court considered the alleged misrepresentations of Attorney Nall when denying Nall's motion to withdraw.**

In Nall's motion to withdraw filed on July, 19, 2004, he alleged that he was unable to continue to represent Petitioner because he was "unable to secure [his] cooperation" and that Petitioner "is antagonistic toward the undersigned for reasons unknown to the undersigned." Doc. 24 at 1. He also indicated that Harrison was experiencing similar problems with Petitioner. The Respondents objected to Nall's motion because Petitioner had not shown that he did not receive qualified legal counsel (as defined by 21 U.S.C. § 848(q)(4)(B)), and it appeared that Petitioner was simply unhappy with Nall's representation. The Respondents also contended that Petitioner's refusal to communicate and cooperate with his appointed counsel was not an appropriate basis for withdrawal, and noted that the case was in a posture for the court to rule on the petition. Finally, the State asserted that it would oppose any attempt by Petitioner to amend his pending habeas petition as time-barred.

When ruling on this motion, I agreed with the contentions set forth in the State's objection. Substantively, the Petitioner's case was presented about as well as the law would permit. Most importantly, I had completed my review of the petition and anticipated an order and opinion within a few weeks. Therefore, no additional pleadings were required and the case was in a posture that granting the motion was not necessary. None of the alleged misrepresentations by Nall were considered in ruling on this motion.

6. **Whether and to what extent this Court considered the alleged misrepresentations of Attorney Nall when denying Petitioner's motion to proceed *pro se.***

In his motion to dismiss counsel and proceed *pro se* (doc. 28) filed on August

4, 2004, Petitioner simply reiterated the issues he had raised in his previous emergency motion. Certainly, the Petitioner is not an attorney and there was (and is) no reason to believe that he could handle this matter better than Nall. No new circumstances were alleged that gave me any reason to grant this motion. Therefore, the allegations of misrepresentation were not considered any differently than they had been in the previous emergency motion, and the determinations which factored into the denial of the emergency motion were the same.

## ANALYSIS

Petitioner has failed to prove fraud on the court by clear and convincing evidence. The misrepresentations made by Nall do not rise to the level of "egregious misconduct" (such as bribery of a judge or jury or fabrication of evidence), nor do they indicate some sort of tampering with the judicial process which has caused an injury to more than a single litigant. Rozier, supra, 573 F.2d at 1338; See Hazel-Atlas Glass Co., 322 U.S. at 246. Most importantly, however, Petitioner has not demonstrated that "the judicial machinery [has not] perform[ed] in the usual manner its impartial task of adjudicating cases" or that judicial process has been subverted. Travelers Indemnity Co., supra, 761 F. 2d at 1551.

The allegations in this case boil down rather simply to the following: because Harrison could not sign pleadings which had to be filed in this federal district court, he had an attorney who worked closely with him, John Nall, sign Petitioner's federal pleadings. Harrison communicated this to Petitioner, who then signed and returned the petition to Nall for filing.

It is essentially undisputed that Harrison was primarily involved in the preparation of Petitioner's federal habeas petition.[8] Harrison's qualifications and competency have not been challenged by Petitioner. It is also undisputed that

---

[8]Various correspondence regarding The Florida Bar complaint support this conclusion. See attachments at doc. 56.

Case No.: 3:04cv66/RV

Petitioner did not express dissatisfaction with Harrison's prior representation, nor has he shown that Harrison and Nall do not have a close working relationship. Petitioner has not alleged how his habeas petition would have been different if Harrison had filed his federal habeas petition, instead of Nall, nor has he alleged that he would have objected to Harrison's appointment. Petitioner has not demonstrated any scheme to defraud him or this court.

A review of Petitioner's Rule 60(b) motion, as well as his emergency motion for appointment of new counsel and his motion to proceed *pro se*, plainly reveals that the Petitioner is dissatisfied with the adequacy of his petition. For example, Petitioner states that Nall inadequately briefed the claims presented in his petition and did not present an available claim.[9] Doc. 52, p. 29, fn 21. This dissatisfaction, however, and the misrepresentations of Nall in his motion for appointment of counsel do not constitute "fraud upon the court" and are far from the clear and convincing evidence necessary to justify reopening a final judgment.

A relief from judgment under Rule 60(b)(6) is an extraordinary remedy warranted after a showing of exceptional circumstances. In this case, Petitioner was not denied an opportunity to present his claims to this Court. In fact, the constitutional claims raised in his habeas petition which were not procedurally barred were decided on the merits. While Petitioner asserts that Nall's misrepresentations impugned the integrity

---

[9] In particular, Petitioner alleges that Nall omitted a claim from his federal habeas petition, i.e. the knowingness and voluntariness of his guilty pleas, which should have been raised. This issue was raised in Petitioner's motion for post-conviction relief and the Supreme Court of Florida affirmed the trial court's denial of relief on this claim. Specifically, Petitioner claimed that his pleas were involuntary because of his trial counsels' unfulfilled promise that certain crime scene photographs of his family would not be shown to the jury during the penalty phase of the trial. The trial court found the testimony of Petitioner's trial counsel to be credible that at no time was Petitioner told that this photographic evidence would be excluded. The trial court also found that Petitioner entered his guilty pleas intelligently and with the knowledge that the court was to delay ruling on the admissibility of the photographs until presented during the penalty phase. See Zakrewski v. State, 866 So.2d 688, 696 (Fla. 2003). The Supreme Court of Florida determined that the trial court's findings were supported by competent and substantial evidence. Petitioner also claimed that his pleas were involuntary because of his trial counsels' ineffectiveness in failing to move to suppress certain crime scene evidence. The Supreme Court of Florida rejected this claim without discussion based on their conclusion that Petitioner's trial counsel were not ineffective in this regard. Id. at 695.

Case No.: 3:04cv66/RV

of the habeas proceeding, he does not demonstrate how Nall's actions compromised this Court's review of his habeas claims.  As discussed supra,  Petitioner was informed as to whom Nall was and why he was signing the petition instead of Harrison. Additionally, the Petitioner received correspondence from Nall on at least three occasions.  See doc. 52 at attachments C, I, M.  While the Petitioner refers to Nall as an "interloper" (doc. 52, p. 29), he knew that Nall and Harrison had a working relationship when he signed his habeas petition, and he knew why Nall, instead of Harrison, was representing him in his federal habeas proceeding.  There is nothing in the record to indicate that Nall abandoned Petitioner, nor engaged in any conduct which could be deemed egregious.  The integrity of these proceedings was not compromised.  Therefore, Petitioner is not entitled to relief pursuant to Rule 60(b)(6).

Finally, in his 60(b) motion, Petitioner raises the issue that his relationship with Nall became adversarial after he filed a Florida Bar complaint against him and that confidential client information was disclosed to Respondents.  Regardless of whether their relationship became adversarial, this situation did not impact the integrity of the habeas proceeding, nor does it constitute an exceptional circumstance justifying extraordinary relief.  Any alleged adversarial relationship developed after the habeas petition was filed and was under review by this Court.  It had no bearing on the claims which were presented nor on this Court's review of these claims.  With regard to the disclosure of confidential communications, as pointed out by Respondents in their suggestions in opposition to Petitioner's motion (doc. 55), they had already filed their response to the habeas petition before Petitioner's bar complaint was received by the Florida Bar and forwarded to their offices.  Additionally, Petitioner himself apprised Respondents of the particulars of his dissatisfaction with Nall through the filing of his emergency motion for the appointment of new counsel (doc. 17).  Thus,  the disclosure of confidential information, if any, had no impact on the integrity of Petitioner's habeas proceeding and does not constitute fraud upon the court.

Case No.: 3:04cv66/RV

For all of the reasons discussed above, the Petitioner's motion must be, and is, DENIED.

DONE AND ORDERED this 26th day of September, 2007.


/s/ *Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**